IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PILOT TRAVEL CENTERS, LLC                                                          PLAINTIFF

V.                                                                CAUSE NO. 3:15-CV-360-CWR-LRA

MID-CONTINENT CASUALTY                                                            DEFENDANT
COMPANY

### ORDER

Before the Court are cross-motions for summary judgment on the plaintiff's declaratory judgment claim. After considering the facts, arguments, and applicable law, the plaintiff's motion will be granted and the defendant's motion will be denied.

I.   **Factual and Procedural History**

The facts of this case are not disputed.

In February 2011, Pilot Travel Centers contracted with Estes Equipment Company to perform construction work at a Pilot/Flying J gas station in Pearl, Mississippi. They agreed that Estes would buy insurance for the construction and would name Pilot as an additional insured on the policy. They further agreed that Estes would indemnify Pilot for any tort liability caused in whole or in part by Estes. Estes bought the insurance from Mid-Continent Casualty Company.

Two months later, Teri Keckley was injured at the gas station in question. She alleged that her injuries were caused by construction tape left on the premises by Estes or Estes' subcontractor. She eventually filed suit in state court seeking damages against Pilot, Flying J, Estes, and the subcontractor.

Mid-Continent was notified of Keckley's claim. It agreed to defend Estes, but refused to defend Pilot. Mid-Continent reasoned that the indemnity language in the Pilot-Estes contract was

invalid under Mississippi law. Pilot and Mid-Continent's lawyers exchanged correspondence but could not resolve the dispute.

Pilot subsequently filed this suit in state court. Among other things, it sought a declaratory judgment on coverage and damages for Mid-Continent's alleged bad faith failure to defend it. Mid-Continent removed the suit here. The parties engaged in discovery and filed various dispositive motions. The cross-motions on coverage are resolved below.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

"Where the relevant facts are not in dispute and the critical questions turn purely on legal rights and relationships, summary judgment is appropriately considered." *Mesa Underwriters Specialty Ins. Co. v. LJA Commercial Solutions, LLC*, No. 3:13-CV-29, 2015 WL 1457537, at *2 (S.D. Miss. Mar. 30, 2015), *aff'd*, --- F. App'x ---, 2016 WL 537117 (5th Cir. Feb. 10, 2016).

## III.    Discussion

### A.     Law

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

"The interpretation of insurance policy language is a question of law." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998) (citation omitted). "It is well-established that 'when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written.'" *Acadia Ins. Co. v. Hinds Cnty. Sch. Dist.*, No. 3:12-CV-188, 2013 WL 2897931, at *2 (S.D. Miss. June 13, 2013) (quoting *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.,* 13 So. 3d 1270, 1281 (Miss. 2009)).

Contract interpretation also focuses on the plain language of the contract, "since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (citation omitted).

**B.      Analysis**

The dispute turns on whether Pilot's contract with Estes meets the insurance policy's definition of "insured contract." The insurance policy defines insured contract as:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.

A comparison of the contractual language with the policy definition reveals that yes, the Pilot-Estes contract is an insured contract. Estes agreed to assume certain tort liability Pilot incurred, as long as the tort liability was caused in whole or in part by Estes.[1]

---

[1] At first blush this definition has a chicken-and-egg problem. Although Estes agreed to pay for the tort liability *it* caused, how could it (or Mid-Continent) know whether Keckley's injuries were caused by Estes as opposed to Pilot, and therefore whether the contract was an insured contract which triggered the duty to defend?
    This reasoning is flawed. Under Fifth Circuit precedent, a contract is or is not an insured contract based upon the plain language of the contract and the policy. It does not depend upon the particular allegations contained in any particular claim against the insured. *See Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 496 (5th Cir. 2000) ("Under the MSA, Air Equipment agreed to assume Swift's liability. Therefore, it appears that *upon its execution* by both parties the MSA became an 'insured contract' under the Policy.") (emphasis added).

Mid-Continent argues for the opposite conclusion based on its belief that the indemnity provision within the Pilot-Estes contract is unenforceable under Mississippi Code § 31-5-41. But the Fifth Circuit's decision in *Mid-Continent v. Swift Energy* holds that reviewing courts are to sharply distinguish coverage determinations (*i.e.*, whether the contract is an insured contract) from indemnity determinations (*i.e.*, whether the indemnity provision is valid). 206 F.3d 487, 492 (5th Cir. 2000). Here, as in *Swift*, this Court finds that coverage should be extended to the insured while a decision on indemnity should be reserved for future proceedings.

Mid-Continent then argues that *Swift* is inapplicable because it applied Texas law, not Mississippi law. It is a fair point. Because *Swift* interpreted Texas law, it is controlling only to the extent that Texas and Mississippi law on this arcane aspect of insurance law are identical. The problem then becomes that Mid-Continent has not identified any distinction between Texas and Mississippi law with relevance to this case.[2] Without that, *Swift* is binding.

Instead, Mid-Continent urges this Court to apply a decision from the Northern District of Mississippi which reached the opposite conclusion from *Swift*. *See Certain London Mkt. Ins. Companies v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 269 F. Supp. 2d 722, 724 (N.D. Miss. 2003), *aff'd*, 106 F. App'x 884 (5th Cir. 2004).

Chief Judge Guirola in this District has identified factual distinctions between *Certain London* and cases like today's. *See Roy Anderson Corp. v. Transcon. Ins. Co.*, 358 F. Supp. 2d 553, 565 (S.D. Miss. 2005). One distinction worth noting is that the underlying tort action in *Certain London* had already settled, while our underlying action remains pending – and apparently is at a standstill while this declaratory action is being litigated. It therefore cannot

---

[2] *Cf. Roy Anderson Corp. v. Transcon. Ins. Co.*, 358 F. Supp. 2d 553, 562 (S.D. Miss. 2005) ("Based upon the similarities in Texas law and Mississippi law, the undersigned is of the opinion that the Mississippi Supreme Court would agree with the Fifth Circuit's interpretation of Texas law and the majority view of other jurisdictions that have considered this issue.").

presently be determined who was at fault or whether our indemnity clause is completely unenforceable.

Despite this and other differences, because *Certain London* was affirmed, the arguable tension between it and *Swift* should be noted and reconciled (as best as possible) in this Order. Two considerations lead the undersigned to follow *Swift*.

First, *Swift* and its progeny are published opinions entitled to precedential respect, while *Certain London* is not. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594-95 (5th Cir. 2011)[3]; *Travelers Lloyds Ins. Co. v. Pac. Employers Ins. Co.*, 602 F.3d 677, 683-84 (5th Cir. 2010). Second, Chief Judge Guirola's thorough analysis in *Roy Anderson* shows that *Certain London* is an outlier. *See* 358 F. Supp. 2d at 566-67 (collecting cases).

Although obviously an alternative argument, Mid-Continent also denied coverage by arguing that the underlying plaintiff, Keckley, was suing Pilot for "independent negligence" unrelated to Estes' actions. "To determine if a duty to defend exists one turns to the allegations of the complaint." *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 719 (Miss. 2004) (citations omitted).

Recall that Keckley sued Pilot, Flying J, Estes, and Estes' subcontractor, and sought damages for injuries caused by construction tape left on Pilot's premises "by Defendant Estes and/or [Estes' subcontractor]." That language reasonably and plausibly suggests that Estes was at least in part liable for Keckley's injuries. *See Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006). To the extent Mid-Continent doubted that the facts would ultimately support coverage, it should have defended under a reservation of rights. *See Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996); *Auto. Ins. Co. of*

---

[3] In *Gilbane*, another case arising out of Texas, the Fifth Circuit found *Certain London* unpersuasive "in light of our holding in *Swift*." 664 F.3d at 596 n.2. It is not clear whether the court reached that conclusion because *Certain London* applied Mississippi law or because *Certain London* was truly unpersuasive on the merits.

*Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011) ("the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage").

This is not Mid-Continent's first time in this situation. *See Swift*, 206 F.3d at 489. It is not obvious why it keeps happening. If Mid-Continent wanted to condition its duty to defend "upon the legal enforceability of the indemnity agreement, [it] very easily could have done so." *LeBlanc v. Glob. Marine Drilling Co.*, 193 F.3d 873, 875 (5th Cir. 1999).[4] It did not. Mid-Continent is (again) stuck with the language it agreed to.

Mid-Continent makes other arguments for summary judgment, but they concern causation in the underlying tort action and indemnification. Those issues are more appropriately resolved in the underlying case or in later proceedings here.

## IV.   Conclusion

Pilot's motion for summary judgment on the declaratory judgment count is granted. Mid-Continent's cross-motion is denied. Within 10 days, the parties shall contact the chambers of the Magistrate Judge to request a ruling on their motions to compel.

**SO ORDERED**, this the 21st day of April, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[4] The Fifth Circuit also raised this possibility in *Swift* when it mentioned a law review article "noting that insurers should simply . . . draft clear policy language if they wish to exclude an indemnity provision which proves unenforceable from the definition of 'insured contract.'" 206 F.3d at 493 (citation omitted).